IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAMON JOURDAN,                                          CV. 08-971-MA

          Plaintiff,                              OPINION AND ORDER

     v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.

KIMBERLY K. TUCKER
SWANSON, TOMAS & COON
820 S.W. Second Ave., Suite 200
Portland, Or 97204

     Attorney for Plaintiff

KENT S. ROBINSON
Acting United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

DAVID R. JOHNSON
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

     Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Damon Jourdan brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-403.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Plaintiff contends he became disabled on September 1, 2001, due to his memory problems, dizziness, poor hearing, cervical degenerative disc disease with cervical radiculopathy, and left knee degenerative joint disease.  His claims were denied initially and on reconsideration.  The Administrative Law Judge (ALJ) held a hearing on April 5, 2007 and issued an unfavorable decision on August 13, 2007.  The Appeals Council denied plaintiff's request for review on April 11, 2008.  The ALJ's decision therefore became the final decision of the Commissioner for purposes of review.

Plaintiff seeks an order from this court reversing the Commissioner's final decision and remanding the case for immediate payment of benefits.  For the reasons that follow, I AFFIRM the final decision of the Commissioner.

### STATEMENT OF FACTS

Plaintiff was 51 years old on the date he was last insured. He completed high school and has received some specialized job training.  Plaintiff served in the Navy shortly after high school, spending three years in active duty and two years in the reserves,

and was honorably discharged.  Plaintiff was involved in a serious
accident in 1986, in which he was struck by a car as a pedestrian,
resulting in complete hearing loss to his left ear and diminished
hearing in his right ear.  Plaintiff has a history of alcohol and
cocaine abuse, and has been sober since 2003.  Plaintiff has been
intermittently homeless over the past several years, and was living
at a mission at the time of the hearing.  Plaintiff has worked as
a forklift operator and nursery laborer, and has not worked since
2005.

### THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential
process for determining whether a person is disabled.  Bowen v.
Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.
Each step is potentially dispositive.  The claimant bears the
burden of proof at steps one through four.  See Tackett v. Apfel,
180 F.3d 1094, 1098 (9th Cir. 1999).  At step five, the burden
shifts to the Commissioner to show that the claimant can do other
work which exists in the national economy.  Andrews v. Shalala, 53
F.3d 1035, 1043 (9th Cir. 1995).

At step one, the ALJ found that plaintiff has worked since his
alleged onset of disability, but that it was an unsuccessful work
attempt because he appeared to have stopped working due to his
impairments.  See 20 C.F.R. §§ 404.1520(b), 404.1571 et seq.

At step two, the ALJ found that plaintiff had the following severe impairments:  cervical degenerative disc disease with mild left radiculopathy, left knee degenerative joint disease, partial hearing loss, depressive disorder, cognitive disorder, and substance addiction.  See 20 C.F.R. § 404.1520(c).

At step three, the ALJ found that plaintiff's impairments, or combination of impairments do not meet or medically equal a listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform light work except that he is limited to occasional climbing, kneeling, and crouching and to frequent balancing, stooping, and crawling.  Plaintiff is to avoid concentrated exposure to hazards and precluded from work requiring acute bilateral hearing.  Plaintiff is also limited to simple, repetitive tasks with limited public contact.  See 20 C.F.R. §§ 404.1527, 404.1529.

At step four, the ALJ found plaintiff is not capable of performing his past relevant work (PRW).  See 20 C.F.R. § 404.1565.

At step five, the ALJ found that considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that plaintiff can perform.  See 20 C.F.R. §§ 404.1560(g), 404.1512(g), 404.1560(c).  Accordingly, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

**ISSUES ON REVIEW**

On appeal to this court, plaintiff contends the ALJ committed several errors: (1) failing to properly assess his credibility; (2) failing to properly assess the opinion of Donna Wicher, Ph.D., P.C.; (3) improperly assessing the lay witness testimony; and (4) posing an inadequate hypothetical to the vocational expert.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews, 53 F.3d at 1039. "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

////

////

**DISCUSSION**

I.   <u>The ALJ Properly Assessed Plaintiff's Credibility</u>.

Plaintiff argues that the ALJ failed to provide clear and convincing evidence for rejecting his testimony about the degree to which he is limited by his impairments.  At the hearing, plaintiff testified that he is disabled due to the residual effects of his 1986 head injury and because of back, neck, and left knee pain. However, the ALJ concluded that the intensity, persistence and limiting effects of plaintiff's impairments were not as severe as he alleged.  (Tr. at 16-17.)

In deciding whether to accept subjective symptom testimony, such as pain or depression, an ALJ must perform two stages of analysis.  20 C.F.R. § 404.1529.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th Cir. 1996).  Here, there is no dispute that plaintiff presented objective medical evidence in support of his claims of back, neck, and knee pain, and hearing and memory loss.

At the second stage of the credibility analysis, assuming there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. <u>Smolen</u>, 80 F.3d at 1284; <u>see also</u> <u>Lingenfelter v. Astrue</u>, 504 F.3d

6 - OPINION AND ORDER

1028, 1036 (9th Cir. 2007); Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999). Clear and convincing reasons may include medical evidence tending to discount the severity of the claimant's subjective claims. Smolen, 80 F.3d at 1283. The ALJ also may consider prior inconsistent statements concerning the claimant's symptoms and any inconsistency between the claimant's daily activities and the degree of disability he alleges. See Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001).

If an ALJ finds that the claimant's testimony regarding his subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan, 169 F.3d at 599. In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

Here, the ALJ identified numerous reasons, citing specific record evidence, for discrediting plaintiff. To begin, the ALJ cited inconsistencies between plaintiff's subjective assertion that he is unable to work due to his head injury in 1986 and his own work history and earnings records. In the decision, the ALJ stated that plaintiff had been employed "at well above the substantial gainful activity level for at least ten years after his head

injury." As indicated by the ALJ, plaintiff's work history demonstrates that he worked for several years as a metal worker, and several years as a seasonal park maintenance worker following his head injury. (Tr. 91-98.) These facts clearly undermine plaintiff's main argument-that his hearing and memory loss resulting from his 1986 injury were so severe they limited his ability to maintain gainful employment. As the ALJ found, plaintiff's actual employment history simply is not consistent with this contention. To be sure, when a claimant's work history undercuts his assertions, the ALJ may rely on that contradiction to discredit the claimant. Thomas, 278 F.3d at 958-59. See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001)(noting sufficient reasons to disregard subjective pain testimony included stopping work due to layoff rather than medical reasons, failure to seek care at the time he stopped, and failure to seek treatment, despite complaints of severe pain); see also Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008)(inconsistencies between testimony and medical evidence was a clear and convincing reason to discount testimony of knee pain).

The ALJ specifically noted that plaintiff's drop in earnings in 1999 corresponded with a period of extensive drug abuse, treatment and legal problems, as opposed to limitations from his 1986 injury-facts which plaintiff does not deny and are supported by substantial evidence in the record. Plaintiff contends that the

ALJ erroneously considered the period of plaintiff's drug use beginning in 1999 because it falls outside the disability period in question.  However, an ALJ may appropriately consider a claimant's work and earnings history and make findings accordingly.  Thomas, 278 F.3d at 959.

The ALJ also appropriately considered plaintiff's treatment history.  The ALJ noted inconsistencies between plaintiff's complaints of physically disabling neck, back and knee pain and the "minimal documented signs and findings and very limited and conservative treatment."  (Tr. 16-17.)  As the ALJ stated, plaintiff testified at the hearing that he controls his orthopedic pain with ibuprophen. (Tr. 17, 408.)  Additionally, the ALJ discussed plaintiff's neck pain and resulting neuropathy, noting that following 2004, there was "minimal mention" of neck complaints.  (Tr. 15.)  The ALJ also discussed plaintiff's knee pain, indicating that plaintiff had received minimal treatment.  Where a claimant's alleged disabling condition is controlled with conservative treatment, an ALJ may appropriately discredit a claimant.  Tomassetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).  While a conservative course of treatment alone may be insufficient to completely discredit a claimant, this factor may be considered in combination with other reasons for discounting plaintiff's contentions of disability.  Parra v. Astrue, 481 F.3d at 750-51 (ALJ did not err when he discounted claimant's pain

testimony in part because he relied on over-the-counter pain medication).

Plaintiff argues that the ALJ misinterpreted a doctor's report in 2004, in which plaintiff reported that his left side radiculopathy had resolved with conservative treatment. (Tr. 158-59.) However, the doctor noted that plaintiff was not a surgical candidate, and that plaintiff had experienced "almost total resolution of his symptoms with the use of Motrin three or four times a week" and sent plaintiff home with physical therapy exercises and a follow up MRI. (Tr. 158.) The ALJ noted in the decision that there was minimal mention of any neck difficulties following 2004, and plaintiff has not identified any evidence in the record to contradict the ALJ's conclusion in this regard. The ALJ is the sole arbiter concerning questions of credibility and resolution of conflicts in the record. <u>Morgan</u>, 169 F.3d at 601. "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." <u>Fair v. Bowen</u>, 885 F.3d 597, 604 (9th Cir. 1989).

An ALJ may also rely on ordinary techniques to evaluate credibility. <u>Tomasetti</u>, 533 F.3d at 1040 (discrediting testimony where claimant responded vaguely to specific questions about her capabilities). Here, the ALJ determined that plaintiff's

credibility was undermined when he responded that his primary impediments to working were his "difficulty finding a job, transportation problems, and housing issues, rather than any actual mental or physical impairment." (Tr. 17.) See 42 U.S.C. § 423(d)(1)(A)(noting that a claimant must be disabled due to a medically determinable impairment). The ALJ could appropriately discredit plaintiff on this basis. See Bruton, 268 F.3d at 828 (discrediting claimant because he stopped working for reason due to layoff).

The ALJ also determined that plaintiff's hearing difficulties were not as severe as alleged, finding that: "[plaintiff] did not appear to have any communication difficulties at the consultative examinations or at the hearing." While plaintiff admits that the ALJ may rely upon personal observations at the hearing when making a credibility determination, he argues that the ALJ's observations were simply incorrect. According to plaintiff, he asked "pardon" or to have questions repeated five time throughout the hearing, thus demonstrating his severe hearing impairment. Plaintiff's argument is specious. When plaintiff was asked by his own attorney whether he could hear him okay at the hearing, plaintiff responded that he could. Nevertheless, the ALJ noted plaintiff's partial hearing loss and restricted plaintiff to no acute bilateral hearing in the RFC. Where the ALJ has made specific findings which are

supported by the record, this court will not engage in second-guessing. Thomas, 278 F.3d at 958-59; Morgan, 169 F.3d at 600.

Plaintiff also appears to be arguing that the ALJ erred in discounting plaintiff's allegations of severe mental health impairments when assessing his credibility.  In the decision, the ALJ considered plaintiff's mental health limitations, and concluded that his mental health issues were more severe when he was using drugs and alcohol, and that they were no longer "emergent or specialized" now that he is sober. (Tr. 15-17.)  The ALJ's conclusion is supported by substantial evidence the record.[1]  To be sure, plaintiff sought a switch in his anti-depressant medication in March 2007 but reported that he was not experiencing depressive symptoms at that time. (Tr. 366.)  Additionally, plaintiff does not contend, and the record does not show, that his depression and mental health concerns are not adequately controlled with medication.   The fact that plaintiff takes anti-depressant medication does not establish disability.  Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006)(an impairment that is controlled effectively is not disabling for social security purposes).  Where the evidence supports the ALJ's conclusion, this

---

[1]The ALJ also discussed that plaintiff's mental impairments may have been more severe when he was abusing drugs and alcohol, and noted that plaintiff is not eligible for disability benefits if his addiction is a material contributing factor.  (Tr. 17.) Plaintiff does not challenge the ALJ's findings in this regard.

court "may not substitute its judgment for that of the Commissioner." Edlund, 253 F.3d at 1156.

Thus, when these reasons are taken together, I conclude that the ALJ identified clear and convincing reasons for not fully crediting plaintiff's testimony concerning the severity of his limitations. It is clear from the record that the ALJ did not arbitrarily discredit plaintiff. Tomasetti, 533 F.3d at 1039.

## II.  Dr. Wicher's Opinion.

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons for doing so. Rodriquez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Bayliss, 427 F.3d at 1216. When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. Id.

Plaintiff argues that the ALJ erred by implicitly rejecting portions of the opinion of Donna Wicher, Ph.D., P.C. Dr. Wicher performed a comprehensive psychodiagnostic evaluation of plaintiff on May 25 2005. According to plaintiff, the ALJ failed to properly credit Dr. Wicher's statement that plaintiff was at times confused

13 - OPINION AND ORDER

when performing cognitive tasks, and the following portion of that opinion:

> Assuming the deficits in concentration, persistence, and pace which [plaintiff] presently demonstrates are due to the effects of the accident which occurred eight or nine years prior to this evaluation these deficits are likely to be permanent and would continue to make it more challenging for Mr. Jourdan to sustain full-time employment. (Tr. 270.)

Plaintiff asserts that the ALJ's RFC did not adequately account for Dr. Wicher's finding that plaintiff became confused at times, and contends that Dr. Wicher essentially opined that plaintiff cannot work on a "regular and continuing basis" as required under SSR 96-8p. See SSR 96-8p (defining regular and continuing basis as eight hours per day, five days per week). I disagree.

Here, the ALJ fully credited Dr. Wicher's opinion. Contrary to plaintiff's suggestion, Dr. Wicher's report that plaintiff was "at times confused" does not indicate that plaintiff was prohibited from performing simple tasks. The same is true with respect to plaintiff's contention that Dr. Wicher "essentially opined" that he is unable to work on a "regular and continuing basis." Dr. Wicher did not opine that plaintiff was precluded from performing simple, routine tasks, or that his confusion and deficits in concentration, persistence and pace precluded employment altogether. At best, Dr. Wicher's opinion may be described as ambiguous with respect to plaintiff's functional limitations. To be sure, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical

evidence." <u>Tomasetti</u>, 533 F.3d at 1041-42; <u>Andrews</u>, 53 F.3d at 1039-40.   Dr. Wicher opined that plaintiff had moderate deficits in concentration, persistence and pace, with no deficits in activities of daily living or social functioning.   Here, the ALJ adequately captured those limitations described by Dr. Wicher in the RFC.   <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169 (9ᵗʰ Cir. 2008).[2]   <u>See also</u> <u>Frank v. Barnhart</u>, 326 F.3d 618, 621 (5ᵗʰ Cir. 2003)(ALJ need not make a specific finding of claimant's ability to sustain employment; such a finding may be subsumed within the RFC assessment itself); <u>Aiken v. Astrue</u>, 2008 WL 4810085 (W.D. Wash., Oct. 31, 2008)(same).

Additionally, plaintiff points to no other evidence in the record that would indicate that plaintiff suffers more than

---

[2]Plaintiff also contends that the ALJ erred in failing to include his mild bunion and mild big toe arthritis on his left foot in the Step Two findings.   However, plaintiff's bunion and arthritis were not cited as "illnesses, injuries or conditions that limit [his] ability to work" in plaintiff's application for benefits.  (Tr.  54.)  And, although plaintiff submits that these conditions cause him pain, he has not identified any specific functional limitations caused by these conditions, and the record does not reveal any additional limitations above and beyond those addressed in the RFC.   Because Step Two was resolved in plaintiff's favor, any such error was harmless.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 682 (9ᵗʰ Cir. 2005); <u>Yzaquirre v. Astrue</u>, 2009 WL 136018 (D.Or. Jan. 20, 2009).  Additionally, plaintiff does not assert that the ALJ erred in failing to include any alleged limitations resulting from the bunion or big toe arthritis at Step Three.  <u>Burch</u>, 400 F.3d at 683 ("An ALJ is not required to discuss combined effects of a claimant's impairments or compare them to any listing in any equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.")

moderate difficulties in concentration, persistence and pace, or that such deficits preclude employment. On the contrary, a DDS non-examining psychologist, Bill Hennings, Ph.D., assessed that due to plaintiff's cognitive limitations, he was limited to simple, routine tasks. (Tr. 274-86.) When the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. <u>Thomas</u>, 278 F.3d at 959. I find no error in the ALJ's treatment of Dr. Wicher's opinion.

IV. <u>The ALJ's Failure to Discuss Lay Witness Testimony Was Harmless</u>.

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001); <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ is required to account for competent lay witness testimony, and if he rejects it, provide germane reasons for doing so. <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009); <u>Lewis</u>, 236 F.3d at 511. The ALJ can reject lay witness testimony to the extent that it conflicts with other testimony, the medical record, or the claimant's activities. <u>Bayliss</u>, 427 F.3d at 1218. Additionally, lay witness testimony must be complete and detailed enough to allow the ALJ to determine the nature, severity and duration of the impairment and the claimant's "residual functional

capacity to do work-related physical and mental activities." 20 C.F.R. § 404.1513(e).

Here, plaintiff provided lay testimony from two witnesses. The first was Joe Maples, plaintiff's uncle. In 2007, Maples reported that plaintiff has suffered hearing loss and memory loss since his accident in 1986, which he believes prevents plaintiff from working. (Tr. 119.) Maples stated that plaintiff has difficulty following instructions and becomes easily annoyed and frustrated with people. In 2005, Maples also provided a witness statement noting that plaintiff suffered some difficulty with hearing, memory, understanding, concentration and following instructions. (Tr. 82.)

The second lay witness statement was from Troy Batson, who was plaintiff's supervisor at John Holmlund Nursery from approximately November 2004 until January 2005. (Tr. 117.) Batson explained that plaintiff could not remember complex instructions, suffered poor memory, and became easily frustrated. Batson also stated that plaintiff had difficulty hearing, especially around the equipment.

In the decision, the ALJ rejected the lay testimony for the same reasons plaintiff's testimony was discredited, providing only the following rationale: "[t]he undersigned finds the third party statements of record to be similarly less than fully credible." The ALJ's decision wholly fails to discuss Maples' or Batson's testimony or provide any reasons germane to either witness for

17 - OPINION AND ORDER

finding their statements less than credible.  Therefore, I conclude
that the ALJ has erred.    Stout v. Comm'r, Soc. Sec. Admin., 454
F.3d 1050, 1054 (9th Cir. 2006).

Such an error may be harmless, however, if this court can
confidently conclude that "no reasonable ALJ, when fully crediting
the testimony, could have reached a different disability
determination."  Stout, 454 F.3d at 1056.  Here, Maples' 2005 third
party report does not describe in detail any functional limitations
of plaintiff, and even if it is fully credited, no reasonable ALJ
would reach a different conclusion. 20 C.F.R. § 404.1513(e).

However, Batson and Maples' 2007 witness statements provide
additional detail concerning plaintiff's functional limitations.
Yet, upon careful consideration, I cannot conclude that a
reasonable ALJ would reach a different disability determination.
Here, the limitations described by Batson and Maples (i.e.,
difficulty hearing, becoming easily frustrated, difficulty with
complex instructions) were encompassed by the ALJ's RFC.  The ALJ
limited plaintiff to simple, repetitive tasks, with no acute
bilateral hearing, and limited public contact.  Accordingly, even
if fully credited, I conclude that the statements would not have,
in and of themselves, allowed a reasonable ALJ to reach a
"different disability determination."  Stout, 454 F.3d at 1056.
Therefore, any error in failing to discuss the statements was
harmless in this instance.

V.    <u>The Commissioner Met His Burden at Step Five</u>.

At step five of the sequential evaluation, the burden shifts to the Commissioner to establish that there are jobs in the national economy that the claimant can do.  <u>Andrews</u>, 53 F.3d at 1043.  The Commissioner can satisfy this burden by eliciting testimony from a vocational expert (VE) to determine whether jobs exist in the national economy that the claimant can perform despite his limitations and restrictions.  <u>Tackett</u>, 180 F.3d at 1103-04. The hypothetical posed to the VE must accurately reflect all of the claimant's limitations.  <u>Bayliss</u>, 427 F.3d at 1217.

The RFC finding and the hypothetical posed to the vocational expert included only limitations based on medical assumptions supported by substantial evidence in the record that reflected all of plaintiff's limitations.  These limitations were those that the ALJ found to be credible and are supported by substantial evidence in the record.  It was proper for the ALJ to rely on the VE's answer.  <u>Id.</u> at 1217-18.

////

////

////

////

////

////

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED.   This action is DISMISSED.

IT IS SO ORDERED.

DATED this _9__ day of NOVEMBER, 2009.


_/s/  Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Judge